UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DANIEL S. MURRAY,

                         Plaintiff,

  v.                                                       9:25-CV-0733
                                                               (BKS/ML)

SERGEANT FELDESIN, et al.,

                        Defendants.
_____

APPEARANCES:

DANIEL S. MURRAY
Plaintiff, pro se
586
Washington County Jail
399 Broadway
Fort Edward, NY 12828


BRENDA K. SANNES
Chief United States District Judge

**DECISION and ORDER**

I.      **INTRODUCTION**

      Plaintiff Daniel S. Murray commenced this action by filing a pro se civil rights complaint pursuant to 42 U.S.C. § 1983 ("Section 1983"), together with an application to proceed in forma pauperis ("IFP"). Dkt. No. 1 ("Compl."); Dkt. No. 2 ("IFP Application"). By Decision and Order entered on July 3, 2025, this Court granted plaintiff's IFP Application, and following review of the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), dismissed certain of plaintiff's claims as duplicative of claims brought by him in

1

another pending action, and dismissed the remainder of the complaint for failure to state a claim upon which relief may be granted. Dkt. No. 6 ("July 2025 Order").[1]

Presently before the Court are the following: (1) plaintiff's letter request for injunctive relief, Dkt. No. 8 ("Letter Request"); and (2) plaintiff's amended complaint, Dkt. No. 10 ("Am. Compl.").

## II. SUFFICIENCY OF THE AMENDED COMPLAINT

### A. The Complaint and July 2025 Order

In the complaint, plaintiff asserted claims based on alleged wrongdoing during his incarceration at Warren County Correctional Facility as a convicted prisoner. *See* Compl. More specifically, plaintiff alleged that at some point on or around March 13, 2025, defendants Undersheriff Cuomo, Corrections Sergeant Feldesin, Corrections Sergeant Gray, and Corrections Officer Bederian interfered with his desire to conduct legal research, deprived him of access to "legal material[,]" and "opened [his] court documents" outside of his presence, and officials separately denied him access to "Bible studies," reviewed private medical records, and deprived him of an adequate diet. *See generally*, Compl.

The complaint was liberally construed to assert the following claims against the named defendants: (1) a First Amendment access-to-courts claim; (2) a First Amendment mail tampering claim; (3) a First Amendment retaliation claim; (4) a Fourteenth Amendment privacy claim; and (5) an Eighth Amendment conditions-of-confinement claim. *See* July 2025 Order at 7-8. Following review of the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28

---

[1] Plaintiff had three other actions pending in this District at the time he commenced this action. *See Murray v. Warren County Jail*, No. 25-CV-0622 (BKS/MJK), Dkt. No. 1 (N.D.N.Y. filed May 16, 2025) ("*Murray I*"); (2) *Murray v. Tymeson*, No. 25-CV-0729 (BKS/DJS), Dkt. No. 1 (N.D.N.Y. filed June 9, 2025) ("*Murray II*"); and (3) *Murray v. Canale*, No. 25-CV-0732 (MAD/PJE), Dkt. No. 1 (N.D.N.Y. filed June 9, 2025) ("*Murray III*").

U.S.C. § 1915A(b), plaintiff's Eighth Amendment claims were dismissed without prejudice as duplicative of the claims asserted in *Murray I*, and the remainder of his claims were dismissed without prejudice for failure to state a claim upon which relief may be granted. *Id*. at 9-19.

    **B.**    **Review of the Amended Complaint**

Because plaintiff is proceeding in forma pauperis and is an inmate suing one or more government employees, his amended complaint must be reviewed in accordance with 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b). The legal standard governing the review of a pleading pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) was discussed at length in the July 2025 Order and it will not be restated in this Decision and Order. *See* July 2025 Order at 4-6.

The amended complaint is materially similar to, albeit more detailed than, the original complaint, with two exceptions. First, plaintiff seeks to add Prime Care Medical Inc. ("Prime Care") and Warren County Jail as defendants. *See* Am. Compl. at 1. Second, the amended complaint does not assert any claims against defendants Gray and Bederian. The following facts are set forth as alleged in the amended complaint.

On March 20, 2025, defendant Feldesin "access[ed] [plaintiff's] medical files . . . without [his] consent." Am. Compl. at 1. The medical files were wrongfully provided to defendant Feldesin by an employee of Prime Care. *Id.* Defendant Feldesin "chang[ed] [plaintiff's] medical file in front of [him]" by "remov[ing] soy" as an allergy, indicating only a "sensitivity" to onion and celery, instead of an allergy, and "remov[ing] [plaintiff's] orthopedic appointment out of [the] files." *Id.* at 1-2. Defendant Feldesin also changed plaintiff's medical file so that he no longer received protein drinks and double meals, and deprived plaintiff of "law materials and legal research." *Id.* at 1, 4.

For approximately nine weeks, plaintiff was informed that his orthopedic appointment would be rescheduled, but "this never happened at all." Am. Compl. at 4. Plaintiff's left arm, wrist, and hand were "supposed to be operated on" but the surgical procedure never occurred, and plaintiff remained in "constant pain[.]" *Id.* at 5.

At some point, plaintiff "put in sick call" requests to have his medical file "fixed." Am. Compl. at 2. Plaintiff also wrote to defendant Cuomo regarding defendant Feldesin's conduct, but this official failed to address plaintiff's concerns. *Id.*

On various dates including April 6 and April 11, 2025, defendants Cuomo and Feldesin "tampered with [plaintiff's outgoing] mail" by throwing it away, as shown by a "camera in booking[.]" Am. Compl. at 2-3, 5. Plaintiff believes that officials within the facility discard outgoing mail addressed to courts when the mail concerns complaints against the facility or any of its officers. *Id.* at 5. Plaintiff believes defendants Cuomo and Feldesin participated in this wrongdoing because he authored grievances against them. *Id.* at 2-3.

Following plaintiff's submission of a grievance against defendant Feldesin, this official also "retaliated" against plaintiff by directing "the kitchen" to serve plaintiff "only an apple at dinner" when "everyone else was getting potato chips, salads, and a variety of foods[.]" Am. Compl. at 3.

On March 15, March 20, March 26, April 1, April 7, and April 16, 2025, plaintiff was denied "Bible Studys [sic]" by defendant Cuomo and "Administrations[.]" Am. Compl. at 3. Plaintiff was informed on an unidentified date (by an unidentified official) that Bible Study has not been permitted at the facility since 2019. *Id.* Plaintiff asked one or more unidentified officials if the facility would hire a Chaplin, and his request was denied. *Id.*

4

Plaintiff was unable to access "the Lexis Nexis machine" for "over 2 months[.]" Am. Compl. at 3.

Liberally construed, the amended complaint asserts the following Section 1983 claims: (1) First Amendment retaliation claims against defendants Feldesin and Cuomo; (2) First Amendment mail tampering claims against defendants Feldesin, Cuomo, and Warren County Correctional Facility; (3) First Amendment free exercise claims against defendants Cuomo and Warren County Correctional Facility; (4) an Eighth Amendment conditions-of-confinement claim against defendant Feldesin based on meal tampering; (5) Eighth Amendment medical indifference claims against defendants Feldesin and Prime Care; and (6) Fourteenth Amendment medical privacy claims against defendants Feldesin and Prime Care.[2]

Plaintiff seeks money damages. Am. Compl. at 6. For a more complete statement of plaintiff's claims, reference is made to the amended complaint.

### C. Duplicative Claims

Insofar as the amended complaint alleges that plaintiff was deprived of an adequate diet, provided with foods to which he is allergic, and/or denied medical treatment from an orthopedic specialist, plaintiff's allegations are materially similar to his allegations in the amended complaint in *Murray I*. *See Murray I*, Dkt. No. 17. Indeed, plaintiff expressly alleges in that case that following his arrival at Warren County Correctional Facility on March 13, 2025, he was deprived of "double meals" and "protiene [sic] drinks" to retain his existing

---

[2] Insofar as the amended complaint alleges that plaintiff was unable to access "law materials" and certain legal research tools, the pleading does not include any allegations explaining how this (or any other deprivation) hindered his ability to pursue any existing or intended court action. Accordingly, and for the reasons set forth in the July 2025 Order, any intended access-to-courts claim is once against dismissed. *See* July 2025 Order at 10-12.

5

weight, and never received a scheduled visit to an "Orthopedic and Bone Specialist" for hand and wrist injuries. *Id.* at 5, 7-8. Furthermore, plaintiff's Eighth Amendment medical indifference and conditions-of-confinement claims asserted in that action against Warren County (as the real party in interest) and Prime Care survived sua sponte review. *See Murray I*, Dkt. No. 28.

Accordingly, plaintiff's Eighth Amendment claims are dismissed without prejudice as duplicative of the claims in *Murray I*.[3]

### D. Analysis of the Remaining Claims

Plaintiff brings this action pursuant to Section 1983, which establishes a cause of action for "'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted); *see also Myers v. Wollowitz*, No. 6:95-CV-0272 (TJM/RWS), 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (stating that "§ 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights." (citation omitted)). "Section 1983 itself creates no substantive rights, [but] . . . only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted).

#### 1. Municipal Liability

Municipal liability is limited under Section 1983 by *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). In *Monell*, the Supreme Court found that municipal

---

[3] In the event plaintiff wishes to pursue any of these claims against individual defendants, the proper avenue for doing so is through an amended complaint in *Murray I*.

liability existed "where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006). Thus, to successfully state a claim for *Monell* liability, a plaintiff must "make factual allegations that support a plausible inference that the [alleged] constitutional violation took place pursuant either to a formal course of action officially promulgated by the municipality's governing authority or the act of a person with policy making authority for the municipality." *Missel v. Cnty. of Monroe*, 351 Fed. App'x 543, 545 (2d Cir. 2009) (citing *Vives v. City of N.Y.*, 524 F.3d 346, 350 (2d Cir. 2008)). "Absent such a custom, policy, or usage, a municipality cannot be held liable on a respondeat superior basis for the tort of its employee." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *see also Los Angeles County, Cal. v. Humphries*, 562 U.S. 29, 36 (2010) ("[I]n *Monell* the Court held that 'a municipality cannot be held liable' solely for the acts of others, e.g., 'solely because it employs a tortfeasor.'" (quoting *Monell*, 436 U.S. at 691)).

"*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Segal*, 459 F.3d at 219 (noting that once a "district court properly [finds] no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* [is] entirely correct").

"[U]nder New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and therefore, cannot sue or be sued." *Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002); *In re Dayton*, 786 F. Supp. 2d 809, 818 (S.D.N.Y. 2011); *see also Lukes v.*

7

*Nassau Cnty. Jail*, No. 12-CV-1139, 2012 WL 1965663, at *2 (E.D.N.Y. May 29, 2012) (dismissing claims against defendant Nassau County Jail because it "is an administrative arm of Nassau County, without a legal identity separate and apart from the County"). Since Warren County Correctional Facility is an administrative arm of Warren County, without a legal identity separate and apart from the County, it lacks the capacity to be sued. Accordingly, plaintiff's Section 1983 claims against Warren County Correctional Facility are dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b).

In deference to plaintiff's pro se status, the Court will consider whether plaintiff has stated constitutional claims against Warren County, which is the real party in interest. *See Solis v. Cnty. of Westchester*, No. 94-CV-5102, 1995 WL 14072, at *1 (S.D.N.Y. Jan.10, 1995) (noting that the Westchester County Department of Corrections is not a legal entity and that the County of Westchester is the real party in interest); N.Y. County Law § 51 ("Actions or proceedings by or against a county shall be in the name of the county.").

### 2. Retaliation Claims

The legal standard governing retaliation claims was discussed at length in the July 2025 Order and will not be restated herein. *See* July 2025 Order at 14-16.

Liberally construed, the amended complaint asserts a retaliation claim against defendant Cuomo based on allegations that this official tampered with plaintiff's outgoing legal mail and deprived him of access to Bible Study services in response to plaintiff filing a grievance against him. Am. Compl. at 2-3, 5. The amended complaint also separately asserts a retaliation claim against defendant Feldesin based on allegations that this official tampered with plaintiff's mail and directed "the kitchen" to serve plaintiff "only an apple at dinner" in response to plaintiff filing a grievance against him. *Id*. at 2-3.

As with the original complaint, the amended complaint does not identify (1) when plaintiff filed his grievances against defendants Feldesin and Cuomo, (2) the subject of the grievance(s) filed by plaintiff, (3) the nature of the response received to plaintiff's grievance(s), if any, or (4) the date that any response was received.  Furthermore, by plaintiff's own allegations, defendant Feldesin engaged in wrongdoing within days of plaintiff's arrival at Warren County Correctional Facility, the mail tampering was carried out by other officials in addition to defendants Feldesin and Cuomo, and the Bible Study services were denied pursuant to a facility-wide policy.  Thus, the Court is once again unable to plausibly infer that the alleged "adverse action" experienced by plaintiff was motivated by his engagement in protected activity.[4]

Accordingly, and for the reasons set forth in the July 2025 Order, plaintiff's retaliation claims are once again dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

---

[4] Insofar as the amended complaint alleges that defendant Feldesin directed "the kitchen" to serve plaintiff "only an apple at dinner" in response to plaintiff filing a grievance against him, the pleading does not include any details regarding how plaintiff became aware of this directive.  Furthermore, plaintiff alleges elsewhere in the amended complaint that he was only repeatedly denied "potato chips," as opposed to full meals.  *See* Am. Compl. at 5.  Thus, the Court has no basis to plausibly infer either that defendant Feldesin was personally involved in the isolated meal deprivation, or that any such deprivation amounted to adverse action.  *See, e.g., Amaker v. Annucci*, No. 14-CV-9692, 2016 WL 5720798, at *5 (S.D.N.Y. Sept. 30, 2016) ("Courts have repeatedly held that occasional deprivations of food are de minimis and do not rise to the level of adverse actions for purposes of a retaliation claim."), *aff'd* 721 F. App'x 82 (2d Cir. 2018) (summary order) (citing *Hill v. Laird*, No. 06-CV-126, 2014 WL 1315226, at *11 (E.D.N.Y. Mar. 31, 2014)) (holding that the defendants' "refusal to give [the] [p]laintiff his food" on one occasion "[did] not rise to the level of adverse actions."); *see also Heyliger v. Iffert*, No. 9:18-CV-1113 (LEK/CFH), 2018 WL 11574474, at *11 (N.D.N.Y. Nov. 1, 2018) ("Even assuming Plaintiff engaged in protected conduct when he verbally complained about the cell search, the delay in serving one meal does not constitute an adverse action." (citing *Fann v. Arnold*, No. 14-CV-6187, 2016 WL 2858927, at *1 (W.D.N.Y. May 16, 2016) (concluding that the alleged deprivation of one meal was insufficient to constitute an adverse action))); *Snyder v. McGinnis*, No. 03-CV-0902, 2004 WL 1949472, at *11 (W.D.N.Y. Sept. 2, 2004) (holding that a deprivation of meal on two occasions is de minimis and does not state a claim for retaliation).

### 3. Mail Tampering Claims

The legal standard governing mail tampering claims was discussed at length in the July 2025 Order and will not be restated herein. See July 2025 Order at 12-14.

At this stage of the proceeding, and mindful of the Second Circuit's directive that a pro se plaintiff's pleadings must be liberally construed, see *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), the Court finds that plaintiff's mail tampering claims against defendants Feldesin, Cuomo, and Warren County survive sua sponte review and require a response. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion.

### 4. Free Exercise Claims

The First Amendment to the United States Constitution guarantees the right to free exercise of religion. See U.S. Const. amend. I; *Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005). As is true with regard to the First Amendment generally, the free exercise clause applies to prison inmates, subject to appropriate limiting factors. See *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) (holding that "[p]risoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause" (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)).

"[A]n inmate does not need to establish a substantial burden in order to prevail on a free exercise claim under § 1983." *Kravitz v. Purcell*, 87 F.4th 111, 125 (2d Cir. 2023). "In the prison context, however, 'the right to free exercise of religion' is balanced against 'the interests of prison officials charged with complex duties arising from administration of the penal system.'" *Kravitz*, 87 F.4th at 127-28 (quoting *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990)). Thus, "an infringement of the free exercise of religion [may be] permissible . .

. if it is 'reasonably related to legitimate penological interests.'" *Id*. (quoting *Benjamin*, 905 F.2d at 574).

"[T]o assess a free exercise claim, a court must determine (1) whether the practice asserted is religious in the person's scheme of beliefs, and whether the belief is sincerely held; (2) whether the challenged practice of the prison officials infringes upon the religious belief; and (3) whether the challenged practice of the prison officials furthers legitimate penological objectives." *Kravitz*, 87 F.4th at 128 (alterations adopted) (quoting *Farid v. Smith*, 850 F.2d 917, 926 (2d Cir. 1988)).

Liberally construed, the amended complaint alleges that plaintiff was denied "Bible Studys [sic]" by defendant Cuomo and "Administrations" on March 15, March 20, March 26, April 1, April 7, and April 16, 2025. Am. Compl. at 3. Plaintiff also alleges that the facility does not have a Chaplin, and that he was informed – by an unidentified official on an unidentified date – that Bible Study has not been permitted at the facility since 2019. *Id*.

Insofar as plaintiff has asserted a free exercise claim against defendant Cuomo, it is unclear how this official may have been personally involved in depriving plaintiff of access to Bible Study services. Indeed, the amended complaint does not include any details regarding plaintiff's communications with defendant Cuomo about his desire for religious services, or this official's response to any such communication. In any event, the Court has no basis to plausibly infer from the allegations in the amended complaint that defendant Cuomo had the authority to approve plaintiff's request for Bible Study services, yet refused to do so based on a conscious desire to infringe on his religious practice. *See Wiggins v. Griffin*, 86 F.4th 987, 997 (2d Cir. 2023) ("The First Amendment's command that government not 'prohibit' the free exercise of religion, U.S. Const. amend. I, connotes a conscious act, rather than a merely

negligent one . . . . Given this understanding of the First Amendment, isolated acts of negligence cannot violate an individual's free exercise of religion in this context." (internal citations omitted)); *Hamilton v. Countant*, No. 13-CV-669, 2016 WL 881126, at *4 (S.D.N.Y. Mar. 1, 2016) (holding that "damages claims based solely on the negligent infringement of a prisoner's right to religious freedom are not actionable under either the First Amendment or RLUIPA"); *see also Powell v. City of New York*, No. 14-CV-9937, 2016 WL 4159897, at *6 (S.D.N.Y. July 14, 2016) (same), *report and recommendation adopted by* 2016 WL 4147203 (S.D.N.Y. Aug. 3, 2016).[5]

Accordingly, plaintiff's free exercise claim against defendant Cuomo is dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

Insofar as the amended complaint may be construed to assert a free exercise claim against Warren County, at this stage of the proceeding, and mindful of the Second Circuit's directive that a pro se plaintiff's pleadings must be liberally construed, the Court finds that this claim survives sua sponte review and requires a response. In so ruling, the Court expresses no opinion as to whether this claim can withstand a properly filed dispositive motion.

### 5. Medical Privacy Claims

The legal standard governing medical privacy claims was discussed at length in the July 2025 Order and will not be restated herein. *See* July 2025 Order at 16-17.

Plaintiff alleges that defendant Feldesin "access[ed] [his] medical files . . . without [his] consent" on March 20, 2025, and "chang[ed]" the file "in front of [him]" by "remov[ing] soy" as

---

[5] Plaintiff's allegations also seemingly suggest that the lack of access to Bible Study services was based on a facility-wide policy, and the amended complaint is devoid of allegations which plausibly suggest that defendant Cuomo is a policymaking official.

an allergy, indicating only a "sensitivity" to onion and celery, and "remov[ing] [his] orthopedic appointment[.]"  Am. Compl. at 1-2.

While the Court certainly does not condone this alleged behavior, the amended complaint is devoid of allegations which plausibly suggest that plaintiff's medical file included any sensitive information, let alone sensitive information that was (1) not otherwise known by defendant Feldesin, or (2) disclosed by this official.  Plaintiff does not, for example, allege that his allergies or hand injury were sensitive medical conditions and unknown to others.  Nor does plaintiff allege that he suffered any risk of harm as a result of defendant Feldesin, or others, learning about information in his medical file.  *Cf. Powell v. Schriver*, 175 F.3d 107, 111-112 (2d Cir. 1999) (holding that the disclosure of a medical condition that is "excruciatingly private and intimate [in] nature," or one that is "likely to provoke both an intense desire to preserve one's medical confidentiality, as well as hostility and intolerance from others," is a disclosure that may violate an individual's privacy rights); *Schmiege v. Deputy of Health Henton*, No. 19-CV-7229, 2021 WL 214660, at *3 (S.D.N.Y. Jan. 20, 2021) ("Plaintiff alleges that Henton violated his privacy rights when she discussed with Plaintiff his medical conditions including Plaintiff's 'neck, head, and back injuries' and permitted other prison staff and inmates to overhear this conversation. . . . Simply stated, the medical conditions at issue are not sufficiently serious to implicate the protections of the Fourteenth Amendment.").

Accordingly, plaintiff's medical privacy claims against defendant Feldesin and Prime Care are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

### III. LETTER REQUEST

In his Letter Request, plaintiff raises concerns regarding his meals, medical treatment, and mail tampering, among other things. *See* Dkt. No. 8.

As an initial matter, plaintiff's request, which essentially seeks mandatory injunctive relief directing Washington County officials to obey the law, was not filed in accordance with the Local Rules of Practice for this District. *See* N.D.N.Y. L.R. 7.1(b) ("Except as otherwise provided in this paragraph, motions and opposition to motions require a memorandum of law, supporting affidavit when necessary to establish and provide factual and procedural background relevant to the motion, and proof of service on all the parties. In addition, all motions require a Notice of Motion (except for non-dispositive motions and requests that are permitted by chambers to take the form of letter-requests . . . )"); 65.1 ("A party may seek a temporary restraining order by Notice of Motion or Order to Show Cause, as appropriate. Filing procedures and requirements for supporting documents are the same as set forth in Local Rule 7.1 for other motions."). Moreover, the request is unsupported by record evidence. *See Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) ("[T]o establish standing for a preliminary injunction, a plaintiff cannot "rest on such 'mere allegations,' [as would be appropriate at the pleading stage] but must 'set forth' by affidavit or other evidence 'specific facts,' which for purposes of the summary judgment motion will be taken to be true." (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)); *Ivy Mar Co. v. C.R. Seasons Ltd.*, 907 F. Supp. 547, 561 (E.D.N.Y. 1995) ("[B]are allegations, without more, are insufficient for the issuance of a preliminary injunction."); *Fox v. Anthony*, No. 6:10-CV-839 (GTS/ATB), 2010 WL 3338549, at *2 (N.D.N.Y. July 15, 2010) ("Plaintiff has submitted no evidence, other than his own speculation that defendants . . . will retaliate against him when

they find out that he filed this lawsuit.  The same claim could be made by any inmate who names corrections officers as defendants in any action."), *report and recommendation adopted by* 2010 WL 3338558 (N.D.N.Y. Aug. 23, 2010).  In addition, injunctive relief against non-parties is available only under very limited circumstances, none of which are present here.  *See* Fed. R. Civ. P. 65(d)(2); *Doctor's Associates, Inc. v. Reinert & Duree, P.C.*, 191 F.3d 297, 302-03 (2d Cir. 1999); *United States v. Regan*, 858 F.2d 115, 120 (2d Cir. 1988); *see also In re Rationis Enterprises, Inc. of Panama*, 261 F.3d 264, 270 (2d Cir. 2001) ("A court may not grant a final, or even an interlocutory, injunction over a party over whom it does not have personal jurisdiction.").

Finally, and setting aside these more technical issues, the Letter Request was received by this Court on July 3, 2025.  On July 17, 2025, a letter was filed in *Murray I* advising the Court that plaintiff was released from prison.  *See Murray I*, Dkt. No. 18.  While plaintiff subsequently advised the Court that he was returned to the custody of Washington County Correctional Facility on August 8, 2025, *see* Dkt. No. 11, the Court has no reason to conclude that any of the alleged wrongdoing set forth in the Letter Request resumed following plaintiff's reincarceration.  *See, e.g., Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996) ("It is settled in this Circuit that a transfer from a prison facility moots an action for injunctive relief against the transferring facility."); *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) ("In this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility.").

For all of these reasons, plaintiff's Letter Request is denied without prejudice at this time.[6]

## IV. CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that the amended complaint (Dkt. No. 10) is accepted for filing and will supersede and replace the original complaint as the operative pleading; and it is further

**ORDERED** that the Clerk add Prime Care Medical Inc. and Warren County to the docket as defendants; and it is further

**ORDERED** that the following claims **SURVIVE sua sponte review** and require a response: (1) plaintiff's mail tampering claims against defendants Feldesin, Cuomo, and Warren County; and (2) plaintiff's free exercise claim against Warren County; and it is further

**ORDERED** that plaintiff's Section 1983 claims against Warren County Correctional Facility are **DISMISSED with prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) as set forth above; and it is further

**ORDERED** that plaintiff's Eighth Amendment claims are dismissed without prejudice as duplicative of the claims in *Murray I*; and it is further

**ORDERED** that plaintiff's remaining claims are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted; and it is further

---

[6] Plaintiff is advised that concerns regarding his current conditions of confinement should be addressed through administrative channels at his facility and, if necessary, by means of a proper court filing.

**ORDERED** that the Clerk shall issue summonses and forward them, along with three copies of the amended complaint, to the United States Marshal for service upon defendants Feldesin, Cuomo, and Warren County; and it is further

**ORDERED** that upon the completion of service, a response to plaintiff's amended complaint be filed by defendants Feldesin, Cuomo, and Warren County, or their counsel, as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED** that the Clerk **TERMINATE** all defendants other than Feldesin, Cuomo, and Warren County; and it is further

**ORDERED** that plaintiff's Letter Request (Dkt. No. 8) is **DENIED without prejudice** as set forth above; and it is further

**ORDERED** that all pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367.  Plaintiff must comply with requests by the Clerk's Office for any documents that are necessary to maintain this action.  All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions; motions will be decided on submitted papers, without oral argument, unless otherwise ordered by this Court.  Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; his failure to do so will result in the dismissal of this action; and it is further

**ORDERED** that the Clerk of the Court shall provide plaintiff with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam); and it is further

      **ORDERED** that the Clerk serve a copy of this Decision and Order on plaintiff.

**IT IS SO ORDERED**.

Dated: <u>September 11, 2025</u>
       Syracuse, NY

                                                      */s/ Brenda K. Sannes*
                                                      Brenda K. Sannes
                                                      Chief U.S. District Judge